UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PREI ATTLEBORO ASSOCIATES, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| BUILDING ELEVEN REALTY, LLC, and | ) | |
| NEW AGE TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, PREI Attleboro Associates, L.P. ("PREI"), by and through its attorneys Duane Morris

LLP as and for its complaint, alleges as follows:

## PARTIES

1.     PREI is a Pennsylvania limited partnership that has a principal place of business

in West Conshohocken, Pennsylvania.  Neither the general partner, nor any limited partner, of

PREI is a citizen of the Commonwealth of Massachusetts.

2.     Defendant Building Eleven Realty, LLC ("BER") is a Massachusetts Limited

Liability Company with a principal place of business at Building 11, 527 Pleasant Street,

Attleboro, MA 02703.

3.     Defendant New Age Technologies, Inc. is a Massachusetts corporation with a

principal place of business at Building 11, 527 Pleasant Street, Attleboro, MA 02703.

## JURISDICTION AND VENUE

4.     This Court's jurisdiction is based upon 28 U.S.C. § 1332 because there is

complete diversity between plaintiff and defendants, and the amount in controversy exceeds

$75,000 exclusive of interest and costs.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965 because the property at issue is in Attleboro, Massachusetts and a substantial part of the events giving rise to the cause of action occurred in Massachusetts.

## FACTUAL BACKGROUND

6.     On December 22, 2006, PREI and BER entered into a commercial Agreement of Lease Between PREI Attleboro Associates, L.P. as Landlord and Building Eleven Realty, LLC As Tenant (hereinafter referred to as the "Lease").  A true and accurate copy of the Lease is attached hereto as Exhibit "A."

7.     Jonathan L. Brucks, Manager of BER, executed the Lease on behalf of the Defendant BER.  See Exhibit A, p. 32.

8.     The Lease covered certain commercial property located at 527 Pleasant Street, Attleboro, Massachusetts (hereinafter referred to as the "Demised Premises").

9.     The initial term of the Lease is for thirty-six (36) months and, per the Lease, commenced on January 1, 2007.  See Exhibit A, p. 3.

10.     The Annual Base Rent agreed to between PREI and BER for the Demised Premises is as follows:

| Period | Annual Base Rent | Monthly Installment | Annual Base Rent/RSF |
|---|---|---|---|
| Months 1 through 12 | $252,773.76 | $21,064.48 | $5.19 |
| Months 13 through 24 | $252,773.76 | $21,064.48 | $5.19 |
| Months 25 through Expiration Date | $252,773.76 | $21,064.48 | $5.19 |
| **Renewal Term** | | | |
| Months 1 through 12 | $278,099.84 | $23,174.99 | $5.71 |
| Months 13 through 24 | $278,099.84 | $23,174.99 | $5.71 |

11.     In addition to the Annual Base Rent, the parties agreed in the Lease that BER would pay all Operating Expenses, as defined in Section 7 of the Lease, all Utilities as set forth in Section 8 of the Lease, and "all other charges and fees otherwise set forth herein." (hereinafter "Additional Rent"). See Exhibit A, p. 3(f)*.

12.     The Lease also provided that PREI would install a New Heating System which was mutually agreeable to the parties. PREI was required to pay up to $100,000 for the New Heating System which was amortized $20,000 per year over the term of the five year Lease and was included within the Annual Base Rent payable by BER. BER was not to have any additional obligations toward the New Heating System unless the costs were greater than $189,036 (hereinafter "Heating System Costs"). See Exhibit A, p 6.

13.     PREI duly tendered possession of the Demised Premises to BER, provided Utilities, and arranged for the installation of the New Heating System.

14.     BER paid the Annual Base Rent and Additional Rent through July 31, 2007.

15.     Since August 1, 2007, BER has failed and refused to pay the Annual Base Rent and has, likewise, failed and refused to pay the Additional Rent and the Heating System Costs, as provided in the Lease. See Exhibit B, Invoice.

16.     Specifically BER has failed and refused to pay the Annual Base Rent and failed and refused to pay Additional Rent and Heating System Costs for the period August 1, 2007 to present. Id.

17.     On or about August 13, 2007, October 23, 2007 and February 5, 2008, PREI provided BER with written notice of default of the Lease for non-payment of the Annual Rent, Additional Rent and Heating System Costs due under the Lease (hereinafter collectively "Default Letters"). True and accurate copies of each of the Default Letters are attached hereto as Exhibits

C, D, and E.

18.     Each Default Letter further advised BER that in the event BER failed and/or refused to cure its breach within five days, PREI would seek to enforce any and all rights and remedies available to PREI under the Lease and or the law, including, but not limited to, commencement of judicial proceedings against BER.  See Exhibits C, D and E.

19.     BER failed to respond to the August 13, 2007 Default Letter.

20.     On or about October 26, 2007, BER, through its counsel, responded to the October 23, 2007 Default Letter, but it failed to cure its breaches of the Lease by remitting the amounts owed.  See Exhibit F.

21.     On or about February 12, 2008, BER, through its counsel, responded to the February 5, 2008 Default Letter, but it failed to cure its breaches of the Lease by remitting the amounts owed.  See Exhibit G.

22.     More than five days have lapsed since BER received notices of its breach of the Lease and PREI's demand for cure of such breach.

23.     To date, BER has not paid the amounts owed, and PREI believes that BER has no intention of curing its default of the Lease by paying the amounts owed.

24.     PREI believes that BER intends to further breach the Lease by failing to pay amounts due and owing for Additional Rent in the future.

### The Accelerated Rent Provision of the Lease

25.     Section 17 (DEFAULT) of the Lease provides, in pertinent part:

17.     DEFAULT.

(a)     **If (i) Tenant shall fail to pay Rent or any other sum payable to Landlord hereunder when due and such failure continues for more than five (5) days after written notice thereof from Landlord to Tenant** (provided, however, that

Landlord shall not be required to provide written notice to Tenant more than two times during any twelve month period . . .
**Landlord, in addition to all other rights and remedies available to it by law or equity or by any other provision hereof, may at any time thereafter:**

> (i) **declare to be immediately due and payable, a sum equal to the Accelerated Rent Component** (as hereinafter defined), and Tenant shall remain liable to Landlord as hereinafter provided;

> \*      \*      \*

(b) For purposes herein, **the Accelerated Rent Component shall mean the aggregate of**:

> (i)      **all Rent and other charges, payments, costs and expenses due from Tenant to Landlord and in arrears** at the time of the election of Landlord to recover the Accelerated Rent Component;

> (ii)      **the Annual Base Rent reserved from the then entire unexpired balance of the Term** (taken without regard to any early termination of the Term by virtue of any default or any early termination rights set forth herein), **plus all other charges, payments, costs and expenses herein agreed to be paid by Tenant up to the end of the Term** which shall be capable of precise determination at the time of Landlord's election to recover the Accelerated Rent Component, discounted to then present value at the Prime Rate (as defined in Section 7(b)(2)); and

> (iii)      **Landlord's good faith estimate of all charges, payments, costs and expenses herein agreed to be paid by Tenant up to the end of the Term** which shall not be capable of precise determination as aforesaid, discounted to then present value at the Prime Rate (and for such purposes no estimate of any component of the Additional Rent to accrue pursuant to the provisions of Section 7 and Section 8 hereof shall be less than the amount which would be due if each such component continued at the highest monthly rate or amount in effect during the twelve (12) months immediately preceding the default).

(c)      ... All costs of reletting, including, without limitation, the cost of such repairs, changes, alteration and additions, brokerage commissions and legal fees, shall be charged to and be payable by

Tenant as Additional Rent hereunder.

Exhibit A, pp. 17-18, ¶¶ (a), (a)(i), (b) and (b)(i), (ii) and (iii) (emphasis added).

26. Moreover, BER agreed to and is obligated to pay PREI its costs, charges and expenses, including attorneys' fees incurred by PREI as a result of having to enforce BER's obligations under the Lease as follows:

(h) **Tenant shall pay** upon demand **all of Landlord's reasonable costs, charges and expenses**, **including the reasonable fees and out-of-pocket expenses of counsel**, agents and others retained by Landlord, **incurred in enforcing Tenant's obligations hereunder** or incurred by Landlord in any litigation, negotiation or transaction in which Tenant causes Landlord, without Landlord's fault, to become involved or concerned.

Exhibit A, p. 19, ¶ (h) (emphasis added).

### The Guaranty

27. On or about December 22, 2007, Defendant New Age Technologies, Inc. ("NAT" or "Guarantor"), though its authorized agent, Jonathan L. Brucks, executed a Guaranty Agreement for the performance of all obligations and the payment of any and all debt incurred by BER to PREI under the terms of the Lease. The Guaranty was a condition to PREI's entering into the Lease with BER and was an Exhibit (E) to the Lease. A true copy of the Guaranty is attached hereto as Exhibit E to Exhibit A (Lease) ("Guaranty").

28. Pursuant to the terms of the Guaranty, NAT as Guarantor:

2. . . . Irrevocably and unconditionally guarantees and becomes surety for the prompt and faithful payment and performance of all of the covenants, obligations and liabilities of Tenant, its successors and assigns, under the Lease, including, but not limited to, the payments of all installments of rent (as defined in the Lease), all damages in the event of default of any of the provisions of the Lease, and any and all other sums due Landlord thereunder, and also for all representations of tenant under the Lease. All of such obligations are incorporated herein.

*    *    *

4.  It is specifically understood and agreed that if any default by Tenant occurs under the Lease, Landlord shall be entitled to commence any action or proceeding against Guarantor or otherwise exercise any available remedies at law or in equity to enforce the provisions of this Guaranty without first commencing any action or otherwise proceeding against Tenant or any other party, or otherwise exhausting all of its available remedies against Tenant.

5.      In the event that any action is commenced by Landlord to enforce the provisions of this Guaranty, Landlord shall, if it prevails in such action, be entitled to recover from Guarantor the reasonable costs of such action including reasonable attorneys' fees.

See Ex. E to Lease.

29.     The Guaranty contains the following paragraph:

This Guaranty shall be enforced in accordance with the laws of the State in which the Building (as defined in the Lease) is located without giving effect to the principles of conflict of laws.

Id.

30.     On March 4, 2008, PREI sent a formal demand to the Guarantor for the payment of all amounts due and owing from BER.  To date, the Guarantor has failed to comply with the demand.  See Exhibit H.

31.     PREI has satisfied all conditions precedent to the bringing of this action.

## COUNT I

### Breach of Contract

32.     PREI incorporates by reference the foregoing paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.     PREI and BER entered into a valid and enforceable Lease, supported by adequate and sufficient consideration, pursuant to which BER was obligated, *inter alia*, to pay the Annual

Base Rent, the Additional Rent and the Heating System Costs for the Demised Premises in accordance with Section 5 of the Lease.

34.     PREI fully performed its obligations under the parties' Lease contract.

35.     BER materially breached its contractual obligations by, among other things, failing and/or refusing to pay the Annual Base Rent and failing and/or refusing to pay the Additional Rent and Heating System Costs for the Demised Premises in accordance with Section 5 of the Lease.

36.     BER failed and/or refused to effectuate a cure of its breaches of the Lease despite being placed on actual legal notice of the breach by PREI.

37.     As a result of BER's breaches, PREI has suffered, and continues to suffer, substantial harm and damages in an amount to be determined at trial, including attorneys' fees and costs.

## COUNT II

### Breach of the Duty of Good Faith and Fair Dealing

38.     PREI incorporates by reference the foregoing paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.     As set forth more fully above, BER entered into the Lease on or about December 22, 2007.

40.     As set forth more fully above, despite executing the Lease, BER refused to comply with the contractual obligations to which it specifically agreed and as set forth in the Lease.  Indeed, within seven months of the commencement of the Lease, BER was already in

breach of its payment obligations.

41.     As set forth more fully above, despite its duties under the Lease, upon information and belief, BER had no intention of fulfilling its contractual obligations owed to PREI and has, thereby, deprived PREI of the ability to find another suitable tenant, knowing PREI was embarking on a course of investments, incurring significant expenses and foregoing lucrative business opportunities substantially predicated on BER's promises under the Lease.

42.     Moreover, BER's breach of the Lease is all the more egregious because it had no intention to pay the Heating System Costs for the heating system which it selected with PREI during its tenancy.

43.     BER, as set out in detail above, frustrated PREI's reasonable expectations and deprived it of the fruits of the contracts.

44.     BER's acts were commercially unreasonable and deprived PREI of its right to a reasonable profit from their promised relationship under the Lease.

45.     BER performed, or failed to perform, under the Lease in such bad faith and exercised its discretion in such a knowing and malicious manner, with such an intent to deprive PREI of the consideration it reasonably expected under the Lease and the benefit of the bargain, and so undermined and frustrated the fundamental purposes for which the Lease was made, so as to entitle PREI to damages.

46.     BER's conduct constitutes a breach of the implied covenant of good faith and fair dealing concomitant to the Lease.

47.     As a result of BER's breach of its duty of good faith and fair dealing under the Lease, Plaintiff has suffered and will continue to suffer economic injury, and damages, for which BER is liable to PREI in an amount to be determined at trial.

## COUNT III – Breach of Guaranty

### (vs. New Age Technologies, Inc.)

48.     PREI incorporates by reference the foregoing paragraphs 1 through 47 of the Complaint as if fully set forth herein.

49.     Under the terms of the Guaranty, NAT unconditionally guaranteed that it would duly and punctually pay all indebtedness, obligations, liabilities, and undertakings of BER to PREI, including all costs and expenses of collection incurred by PREI.

50.     PREI made demand on BER and the Guarantor for the outstanding amounts owed.

51.     Notwithstanding the terms of the Guaranty and PREI's demand after BER failed to pay the amounts due, the Guarantor, NAT, has failed to pay the amounts due.

52.     Pursuant to the terms of the Guaranty, the Guarantor, NAT, is responsible for the outstanding balance owed by PREI plus interest, costs and attorneys' fees under the express terms of the Guaranty.

53.     All conditions precedent to PREI's rights of recovery herein have been performed or have occurred.

54.     As a result of the failure of Guarantor to make the payments described above pursuant to its obligations as surety under the terms of the Guaranty, PREI has suffered and continues to suffer damages in an amount to be determined at trial.

WHEREFORE, PREI respectfully requests that the Court:

1.      Enter a judgment on Counts I through III in PREI's favor and against BER and NAT for the full amount due as of March 10, 2008, including, but not limited to, a sum equal to the Annual Base Rent and the Additional Rent in arrears, the Heating System Costs, as well as the Accelerated Rent Component as set forth in the Lease, reliance damages, operating expenses, taxes, utility expenses, plus continuing interest, costs and attorneys' fees; plus any additional sums due as a result of any interim default in nonpayment of amounts due under the Lease; and

2.      That the Court award such other relief as is just and proper.

### Demand For Jury Trial

Plaintiff, PREI, respectfully demands trial by jury on any and all claims and/or issues relating to this Complaint for which trial by jury is appropriate.

PREI ATTLEBORO ASSOCIATES, L.P.

By its attorneys,

/s/ Katherine Y. Fergus
Barry C. Klickstein, BBO# 275160
Katherine Y. Fergus, BBO# 637989
Darlene D. Moreau, BBO# 648455
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(857) 488-4253
Fax no.: 857-488-4201
kyfergus@duanemorris.com

Dated:  March 10, 2008

1301421.1